Arthur G. Klein, J.
In an action for annulment on the ground of five years’ incurable insanity, the plaintiff husband moves, five years after the annulment was granted, for cancellation of his agreement to provide monthly care, and for the return to him of $5,000 posted by him as security pursuant to section 141 of the Domestic Relations Law.
The parties were married in Vienna, Austria, in 1934. Since 1938 they have both been residents of New York.
In 1954 the defendant was committed to Rockland State Hospital.
In 1961 a committee was appointed for her person and property. Her assets were listed in the petition for appointment as: (1) 685 shares Massachusetts Investment Trust, (2) real property in Ashtabula, Ohio, (3) 55% ownership of real property on Gumpendorfer Strasse in Vienna (the balance owned jointly by the defendant’s sister and one Otto Duchek).
In 1960 plaintiff commenced an action against her for annulment, alleging her incurable insanity; and for a declaration that she held the Ohio property and the Massachusetts stock in trust for him.
Annulment was granted to him, and in accordance with his demand for relief, she was declared to hold the Ohio real estate and the Massachusetts stock in trust for him. Her committee was directed to transfer the stock to him, as well as the proceeds of the sale of the real estate.
To provide for her care, pursuant to former subdivision 5 of section 7 (now § 141, subd. 1) of the Domestic Relations Law, plaintiff was required to pay $165 per month. He was also required to furnish security, which was fixed at $5,000. He complied with these provisions.
In 1962 the defendant’s committee obtained the permission of this court to sell the Vienna property to Duchek, one of the co-owners. The defendant’s share amounted to 550,000 shillings, corresponding to $21,197.45 in American money. This sum was deposited on May 29,1963 by the committee in the Merchants Bank of New York.
In the meantime, in April, 1962, the defendant was placed on probation from Rockland State Hospital and eventually, in March, 1963, discharged as a patient. The court is informed that *764 plaintiff stopped making the monthly payments to the hospital in April, 1962, when she was first discharged.
In January, 1964, she filed her petition for a judicial declaration of her competence. This petition was accompanied by the affidavit of her husband, averring that they had been seeing each other at least once or twice a week, that they love each other and wish to remarry.
In February, 1964, her petition was granted, the committee was directed to account to her and to turn over to her the funds in his possession. The committee’s final account was filed April 1, 1964 and settled June 2, 1964. Twenty thousand six hundred thirty-seven dollars and sixty-three cents was paid over to the defendant.
In December, 1964, she was readmitted to the hospital and still remains a patient there.
The plaintiff has been directed to resume payments for her care at $330 per month for the first five months and at $210 per month thereafter. These increases reflect an over-all State-wide increase for patients at all State hospitals.
The plaintiff now moves to be relieved of any further obligation for her care and he also moves for the return to him of the security, on the grounds that (a) she is now competent and (b) she has now come into funds to the extent of some $20,000.
States the plaintiff’s attorney in his current affidavit: “It is the plaintiff’s contention that once the plaintiff [defendant] was declared competent, the Department of Mental Hygiene had no right to retain the security monies and upon demand for same was required upon demand by plaintiff to refund the monies. Upon information and belief, plaintiff had made several demands for said monies but said demands were refused by the Department of Mental Hygiene.” '
Section 141 of the Domestic Relations Law provides that the obligation of the husband shall be a continuing obligation, even in the event of her discharge from the hospital.
This fund is no windfall which she recently came by. The property appears to have been hers as early as 1954 when she was originally committed. It was in fact the only property held in her name of which the plaintiff did not have her declared his constructive trustee.
The court is informed by the Attorney-G-eneral that the medical staff of Rockland State Hospital where she is now reconfined is unable to make any present plans for her future release on convalescent care.
It would appear altogether improper to compel a sick wife under these circumstances to use up her nest egg for her current *765 support, and to become a public charge with no assurance of future support in the event of her husband’s death or his inability to provide for her. It is precisely for this reason that the statute exacts the security, and the cases so indicate.
This defendant, now 55 years of age, has a life expectancy of approximately 17 years according to the American Experience Table of Mortality. Obviously $20,000 is insufficient to support her for the rest of her life, either inside or outside of a hospital.
“ It is clear ”, said Froessel, J., in Spelman v. Spelman (188 Misc. 16, 17-18 [Supreme Ct., Queens County, 1946]) “ from the opinion of the Court of Appeals [in Cohen v. Cohen, 289 N. Y. 145, 147] that a husband, who has obtained a dissolution of his marriage with his wife on the ground of her incurable insanity, is obligated to support her during life whether or not she is confined to an institution or is released therefrom upon recovery.” It is her life, not his, which measures the duration of such support (Zuckerman v. Zuckerman, 66 N. Y. S. 2d 18 [Supreme Ct., Kings County, 1946].)
The motion is accordingly denied, but without prejudice to any future application which may be made by either party upon a showing of change of circumstances.